# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

JAMES MYLES (A-15155) )
            Plaintiff )
)
vs. )Case No. _____
)
SYLVIA MAHONE, Med. Dir.; DENNIS )
LARSON, Med. Dir.; S. TALLER, )
Med. Dir.; SCOTT BAKER, Med. Pra- )
ctitioner; WEXFORD HEALTH SERVICES )
Inc.; SIMPSON; )
GUY D. PIERCE, Warden; JACKIE    Defendant(s)
MILLER, Adm. Asst.; MICHAEL P.
RANDLE: Director OF Corrections

## COMPLAINT

☒ 42 U.S.C. §1983 (suit against state officials for constitutional violations)

☐ 28 U.S.C. § 1331 (suit against federal officials for constitutional violations)

☐ Other

_____

*Please note:* This form has been created for prisoners but can be adapted for use by non-prisoners.

       Now comes the plaintiff, JAMES MYLES _____, and states as follows:

My current address is: Pontiac Correctional Center, 700 W. Lincoln St., PO Box 99, Pontiac, Illinois 61764-0099

The defendant Sylvia Mahone, is employed as Medical Director
(FORMERLY)             at Pontiac Correctional Center

The defendant Dennis Larson, is employed as Medical Director
(FORMERLY)             at Pontiac Correctional Center

The defendant S. TALLER , is employed as Medical Director
(CURRENTLY) at Pontiac Correctional Center

The defendant SCOTT BAKER , is employed as Medical Practitioner
(FORMERLY) at Pontiac Correctional Center

(revised 9/96)

The defendant WEXFORD HEALTH SERVICES, is employed as Contractor To Provide Inmate Health Services at Pontiac Correctional Center

Additional defendants and addresses SEE ATTACHED-PAGE #8, ADDITIONAL DEEFENDANTS

For additional plaintiffs or defendants, provide the information in the same format as above on a separate page.

## LITIGATION HISTORY

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?   Yes ☐   No ☒

If yes, please describe

_____

_____

_____

B. Have you brought any other lawsuits in state or federal court while incarcerated?
   Yes ☐   No ☒

C. If your answer to B is yes, how many? _____ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

  1. Parties to previous lawsuit:

   Plaintiff(s) _____

   Defendant(s) _____

  2. Court (if federal court, give name of district; if state court, give name of county)

3. Docket Number/Judge _____

4. Basic claim made _____

5. Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it still pending?)
_____

6. Approximate date of filing of lawsuit _____

7. Approximate date of disposition _____

For additional cases, provide the above information in the same format on a separate page.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Is there a grievance procedure available at your institution?   Yes ☒   No ☐

B. Have you filed a grievance concerning the facts relating to this complaint?   Yes ☒   No ☐   If your answer is no, explain why not
_____

C. Is the grievance process completed?   Yes ☒   No ☐

*PLEASE NOTE: THE PRISON LITIGATION REFORM ACT BARS ANY*

*INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES. PLEASE ATTACH COPIES OF MATERIALS RELATING TO YOUR GRIEVANCE.*

## LIST OF ATTACHMENTS

1. Exhausted Grievance, No. 050416-7 Pages
2. Exhibit 1-02/14/2007 Labratory Report
3. Exhibit 2-06/29/2007 Labratory Report
4. Exhibit 3-02/06/2008 Labratory Report
5. Exhibit 4-07/17/2008 Labratory Report
6. Exhibit 5-07/30/2008 Labratory Report
7. Exhibit 6-10/29/2008 Labratory Report
8. Exhibit 7-02/11/2009 Labratory Report
9. Exhibit 8-06/01/2009 Labratory Report
10. Exhibit 9-07/14/2009 Labratory Report
11. Exhibit 10-07/29/2008 Emergency Room Evaluation Sheet
12. Exhibit 11-07/23/2009 Emergency Room Evaluation Sheet
13. Exhibit 12-06/2009 Federal Bureau of Prisons Clinical Practice Guidelines
14. Exhibit 13-08/16/2009 & 11/22/2009 Letter To Defendant Mahone
15. Exhibit 14-12/29/2009 Consent Form Signed By Plaintiff and Defendant Mahone
16. Exhibit-15-12/03/2009 Letter and Grievance To Defendant Pierce, 3 Pages
17. Exhibit 16-03/21/2010 Letter To Defendant Pierce, 2 Pages
18. Exhibit 17-01/28/2010 Letter To Defendant Taller, 3 Pages
19. Exhibit 18- 04/01/2010 Letter To Defendant Wexford, 3 Pages

## ATTACHED AS APPENDIX TO EXHIBITS

## STATEMENT OF CLAIM

Place of the occurrence <u>Pontiac Correctional Center</u>

Date of the occurrence <u>July 2009 Through To Current Date.</u>

Witnesses to the occurrence <u>Medical Records And Defendant's Themselves.</u>

*State here briefly the FACTS that support your case. Describe how EACH defendant is involved.*
*Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph.*
*Unrelated claims should be raised in a separate civil action.*
   *THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.*

1. This Civil Action is authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Central District of Illinois is the appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to the claim occurred.

## FACTS

3. Plaintiff Myles, is and at all times mentioned herein a prisoner of the State of Illinois in the custody of the Illinois Department of Corrections. He is currently confined in Pontiac Correctional Center in Pontiac Illinois.

4. Approximately the first week of July 2009, plaintiff Myles was at the prisons Health Care Unit (hereinafter HCU) for hypertension clinic evaluation. He was being evaluated by

a visiting/attending physician, Dr. Castrovillo who had plaintiff's medical file laid open on the desk.

5. While looking on plaintiff observed a row of numbers and asked Dr. Castrovillo what they meant. Dr. Castrovillo explained to plaintiff that each set of numbers represented various labaratory tests and corresponding results and began identifying to plaintiff what was being tested for and its numerical representation.

6. Dr. Castrovillo then stated to plaintiff that his **AST** and **ALT** levels (an indicator of the presence of the Hepatitis C virus) registered **abnormal**. He then told plaintiff he would have his blood screened to further determine the presence of the hepatitis virus, and wanted to know if any of the prisons HCU doctors at Pontiac ever discussed with him that he may have hepatitis. The plaintiff replied that no one had.

7. On July 14, 2009 a hepatitis C antibodies blood test was performed on plaintiff's blood and the results registerd that plaintiff was positive for the hepatitis virus.

8. Plaintiff then requested a review of his medical files which was reviewed in the presence of the Facility Privacy Officer, Jack Overfelt, where he discovered that medical staff of the Pontiac HCU, including, but not limited to, defendant's Larson, Mahone and Baker were aware as early as February 14, 2007 that the plaintiff was infected with a life threatening and debilitating virus and kept concealed this information he had a right to have disclosed to him.

9. The February 14, 2007 blood sample of plaintiff had been (Continued on Page 9).

## RELIEF REQUESTED

*(State exactly what relief you want from the court.)*

**WHEREFORE**, plaintiff respectfully prays that this court enter judgment granting plaintiff:

38. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

39. A preliminary and permanant injunction ordering defendant's Taller and Wexford to, 1) immediately order that a liver biopsy be performed on Plaintiff Myles' liver and 2) that he immediately be examined by a hepatologist and thereafter begin treatment under the 2009 standards outlined by **(Continued at Page 16)**.

**JURY DEMAND**          Yes [X]    No [ ]

Signed this ___10th___ day of ___August___,
19 2010.

[signature]

OFFICIAL SEAL
MARK SPENCER
Notary Public - State of Illinois
My Commission Expires Aug 27, 2012

*James Myles*
*(Signature of Plaintiff)*

| Name of Plaintiff: | Inmate Identification Number: |
|---|---|
| JAMES MYLES | A-15155 |
| Address: | Telephone Number: |
| 700 W. Lincoln St., PO Box 99 Pontiac, IL 61764-0099 | N/A |

**ADDITIONAL DEFENDANT'S**

Continued From Page #2

Defendant SIMPSON, is employed as Grievance Officer at Pontiac Corr. Cntr.

Defendant GUY D. PIERCE is employed as Warden at Pontiac Corr. Cntr.

Defendant JACKIE MILLER is employed as Grievance Officer at Springfield Illinois.

Defendant MICHAEL P. RANDLE is employed as Director Of Illinois Department of Corrections at Springfield Illinois.

Each defendant is being sued in his/her individual and official capacities. Each defendant acted under color of state law at all times relevant to this complaint. (**Return To Page 2**).

ordered by defendant Larson and analyzed by an off-site medical facility, whereupon the results revealed that his **AST** and **ALT** levels registered abnormal and clearly listed on the labaratory report as being out of the normal range. (**See Attaced Exhibit-Marked 1**). Plaintiff was not informed of nor treated for the hepatitis C virus by defendant's Larson, Mahone or Baker, nor any other HCU medical staff.

10. Blood samples were again collected from plaintiff on June 29, 2007, by medical order of defendant Mahone, and continued to register abnormal and listed by the off-site medical facility as being out of range. (**See Attached Exhibit-Marked 2**) Plaintiff still was not informed of his declining medical condition by either defendant's Larson, Mahone or Baker, despite his declining medical condition and lower right side abdominal pains.

11. Blood tests continued being ordered by either defendant's Larson, Mahone and/or Baker on February 6, 2008, July 17, 2008, July 30, 2008, October 29, 2008, February 11, 2009, June 1, 2009, July 14, 2009, whereupon each test taken for two-and-a half years indicated that plaintiff's medical illness was becoming progressively worse. The defendant's kept the life-threatening information concealed from him and never offered him counseling in any way, ignoring the fact that sure indicators revealed that his **ALT, AST** and **BLOOD CLUCOSE** levels were testing out of the normal range. (**See Attached Exhibits-Marked 3, 4, 5, 6, 7, 8 and 9**). Plaintiff did not associate stomach pain with the HCV.

12. After plaintiff had identified-through his medical records-he had in fact been being witheld pertinent medical information for 2½ years and that the illness he had was life-threatening he immediately requested treatment for his serious medical con-

dition which was further delayed, disregarded and ultimately denied by defendant Mahone, who as late as July 23, 2009 and despite all earlier tests results listed on a medical Doctors note the following; "No previous Hep C," as though her telling plaintiff then that he tested positive for the hepatitis C virus was the first indication ever that plaintiff had tested positive for the hepatitis C virus. (**See Attached Exhibit-Marked 11**).

13. Plaintiff asked defendant Mahone to provide him with a liver biopsy so that he and the medical doctors could better understand the extent of liver cell death caused by the hepatitis C virus.

14. Defendant Mahone only stated to the plaintiff that he would be alright and that he had plenty of time. Plaintiff then filed a grievance.

15. Several times subsequent to his speaking with defendant Mahone, plaintiff continued requesting that genotyping be done through a liver biopsy to stage his liver disease to determine the extent of damage of whether he had fibrosis, cirrhosis or liver cancer and requested Rebetron treatment therapy for his illness.

16. On November 10, 2009 defendant Mahone had me brought to her office where she asked me a question she already knew the answer to, which was what was my age, for which I replied that I am 63 years old.

17. Defendant Mahone then stated she had reviewed the up-dated medical guideline and that those guidelines recommend no treatment for person 60 years or older and that I would not be provided treatment for the hepatitis C virus.

18. Defendant mahone was quoting her reasons for denying plaintiff's

needed treatment for his serious medical injury from an outdated version of the medical guideline from 2003 which she showed the plaintiff while in her office.

19. Defendant Mahone kept concealed from plaintiff the new up-dated Federal Bureau of Prisons Clinical Practice Guidelines for treatment of prisoners with infectious hepatitis C virus which **eliminated** the "No Treatment" recommendation for prisoners with hepatitis C visrus' who were 60 years or older.

20. Plaintiff obtained the 2009 version of the Federal Bureau Prisons Clinical Practice Guidelines and found in them nothing that provides for a treatment restriction for persons due to age. (**See Attached Exhibit-Marked 12, Page 28**).

21. Plaintiff copied the current version of the guidelines and sent the 2009 version attached to a letter to defendant Mahone informing her that her findings of an age restriction for treatment was sorely flawed and again requested that she reconsider providing me the needed treatment for my liver disease. (**See Attached Exhibit-Marked 13**). Defendant Mahone never responded to my letter.

22. Approximately two months later, December 29, 2009, defendant Mahone had plaintiff brought to the HCU and stated that I would be given the Rebetron therapy for treatment of the hepatitis C virus and told by defendant Mahone that I would have to sign a consent form for treatment.

23. Plaintiff signed the consent form for treatment to be performed by defendant Mahone and witnessed by J. Ferrel, RN. (**See Attached Exhibit-Marked 14**). I asked defendant Mahone when would treatment begin and she stated within weeks.

24. During the time leading up to the December 29, 2009 signing of the consent form by plaintiff for treatment of his liver disease and the filing of an **Emergency Grievance** to defendant Pierce he wrote numerouse letters to defendant Pierce and a second emergency grievance requesting that defendant Pierce exercise his administrative authority and intercede and request that appropriate treatment be provided plaintiff. (**See Attached Exhibit-Marked 15, Pages 1-3**).

25. More than three months had passed since the plaintiff had signed a consent form for treatment of his serious medical injury with the medications Interferon and Ribaviron and no treatment had been provided him, despite defendant Mahone having told the plaintiff on December 29, 2009 he would be receiving treatment within two weeks, plaintiff again wrote defendant Pierce again requesting his help in obtaining the much needed medical treatment for his liver disease. (**See Attached Exhibit-Marked 16, Pages 1-2**).

26. Sometime subsequent to having the plaintiff sign the consent form for medical treatment of his liver condition defendant Mahone was transferred to another prison facility and replaced by defendant Taller, whom the plaintiff spoke with on numerous occasions at plaintiff's work assignment-Officer's Kitchen-inquiring about his treatment plan established by defendant Mahone and if everything was going to take place as defendant Mahone had told him it would. Defendant Taller told plaintiff to write him a letter. (**See Attached Exhibits-Marked 17, Pages 1-3**).

27. Plaintiff eventually was examined by defendant Taller in June of 2010. At that Time defendant Taller informed the plaintiff

that he had tested at the highest levels for abnormality of a person with the hepatitis C virus.

28. Plaintiff asked defendant Taller when he would be getting the treatment for his illness and defendant Taller told plaintiff he could not say at that point. Plaintiff ask him why, and defendant Taller stated; "It depends on how much liver demage has already occured."

29. By this time plaintiff's grievance had been denied by defendant Simpson who relied on the defendant's of the HCU to investigate themselves in relation to his grievance for their failure to provide prompt adequate medical treatment, deliberate indifference to his serious medical needs and, the infliction of cruel and unusual punishment in allowing his condition to progress from bad to worse in their failre to comply with their duty to inform him that he had a life-threatening disease requiring immediate medical intervention to prevent severe organ damage, such as chronic liver disease, cirrhosis, liver cancer and inevitably death.

30. Each time the plaintiff would see defendant Taller, either in his office or at defendant's work assignment, and would inquire about the status of him getting closer to treatment defendant Taller would give plaintiff a different excuse each time for why nothing has been advanced toward his treatment; such as he need to have an EKG performed before he could get the treatment or that he needed to be examined by the prison psychiatrist.

31. The plaintiff was never scheduled for either of the stated

requirements by defendant Taller and each time he would see defendant Taller the excuses would change.

32. At that point the defendant Taller sought to avoid the plaintiff, who ceased inquiring of him about his status for treatment when he would come to plaintiff's work assignment. There also was no further clinics held with the plaintiff by defendant Taller. Plaintiff continued having unidentifiable abdominal pains.

33. Defendant's Miller and Randle denied plaintiff's grievance seeking appropriate medical treatment without adequate investigation into the facts and history of his diagnosed illness.

34. After not being able to convince any of the medical staff that his illness required immediate medical attention and action, which they each knew or should have known was necessary, the plaintiff then wrote defendant Wexford regarding its employees actions against him relative to his diagnosed serious medical condition-that was witheld from him for 2½ years-of hepatitis C requesting that defendant Wexford review his medical file and expidite his much needed treatment at some level. (**See Attached Exhibit-Marked 18, Pages 1-3**). As of August 11, 2010 the plaintiff has not received any response from defendant Wexford, either directly or through its agents. Nor has plaintiff received a biopsy to determine the degree of cell death in his liver or treatment of any sort.

35. With regard to defendant Wexford, plaintiff realledge and incorporate paragraphs 9-34.

36. The deliberate indifference to plaintiff's serious medical needs, by knowing of and not disclosing to the plaintiff that he had a life-threatening disease, refusing to treat his medi-

cal condition through repeated unnecessary delays, interferring with treatment once prescribed and, the failure to provide Plaintiff Myles with an unbiased grievance process to address his serious medical condition violated Plaintiff Myles' rights and constituted cruel and unusual punishment and the denial of due process under the Eighth and Fourteenth Amendment to the United States Constitution.

37. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendant's unless this court grants the declaratory judgment and injunctive relief which plaintiff seeks. (**Continued at Page 7**).

<u>RELIEF REQUESTED</u>
Continued From Page 7

    the Federal Bureau of Prisons-Clinical Practice Guidelines For The Prevention And Treatment of Viral Hepatitis and be administered the rebetron therapy consisting of Interferon and Ribaviran.

38. Compensatory dameges in the amount of $150,000 against each defendent jointly and severally.
39. Punitive damages against each defendant in the amount of $500,000.
40. Plaintiff's costs in this suit.
41. Any addition relief this court deems just and equitable.

Date: 8-11-10

Respectfully Submitted,

*James Myles*
James Myles, pro se
Reg. No. A-15155
PO Box 99
Pontiac, IL 61764

## VERIFICATION

    I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on informatiom and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Signed To Before Me This
11th day of August, 2010

/s/ *James Myles*

_____
NOTARY

OFFICIAL SEAL
MARK SPENCER
Notary Public - State of Illinois
My Commission Expires Aug 27, 2012