**E-FILED**
Thursday, 12 August, 2010  01:18:56 PM
Clerk, U.S. District Court, ILCD

APPENDIX TO EXHIBITS

ILLINOIS DEPARTMENT...
050416   **OFFENDER'S GRIEVANCE**

Page 1 of 7

| Date: 9-7-09 | Offender: (Please Print) James MyLes | ID#: A15155 |
|---|---|---|

| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Pontiac C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility

- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

- [ ] Restoration of Good Time
- [X] Medical Treatment

- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ___/___/___
  Date of Report           Facility where issued

Note:     Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   **Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   **Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   **Chief Administrative Officer**, only if EMERGENCY grievance.
   **Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: This grievance charges medical staff at Pontiac Correctional Center, with Knowingly placing the grievant at a greater risk of developing liver damage by deliberately concealing from him that he tested positive for the hepatitis C virus, and by further delaying and/or denying him appropriate medical care and treatment contrary to the current standard of care.
The facts of this grievance are as follows:
   On February 14, 2007, a blood sample was collected from me and sent to an outside lab for analysis. ⟶

Relief Requested: HCV genotyping, liver biopsy (to stage liver disease), and Treatment with Pegylated interferon plus ribavirin.

[X] Check **only** if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| James MyLes (James MyLes) | A15155 | 9, 7, 09 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ___/___/___      [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to
                                                                             Administrative Review Board, P.O. Box 19277,
                                                                             Springfield, IL 62794-9277.

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | Date of Response ___/___/___ |
|---|---|---|

---

**EMERGENCY REVIEW**

Date Received: 9, 22, 05     Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [X] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____ (Pierce) _____                            9, 22, 05
Chief Administrative Officer's Signature                     Date

050416

The results of this blood test revealed that I had an ALT level of 51, (10-50 is normal), and an AST level of 52, (10-40 is normal).

For the purpose of this grievance, the reader should know that alanine aminotransferase (ALT), and aspartate transaminase (AST) levels are sensitive indicators of liver injury.

The same blood test revealed that I had a Bun/Creat Ratio of 6.2, (12-20 is normal), and my HDL was 25, (40-60 is normal).

See: Exhibit-1 (1 pg. blood test)

On June 29, 2007 another blood sample was collected from me and analyzed which revealed that my AST level was 55, and my Creatinine level was 1.7, (0.5-1.5 is normal), and Bun/Creat Ratio was 5.9, and HDL was 27.

See: Exhibit-2 (1 pg. blood test)

On February 6, 2008, my AST level was 41, my Bun/creat Ratio was 8.7, my HDL level was 31, and Triglyceride level at 164, (45-150 is normal).

See: Exhibit-3 (1 pg. blood test)

On July 17, 2008, my AST level was 83, ALT level was 56, Creatinine level was 1.6, HDL level was 31, and I had a Glucose level of 122, (65-110 is normal).

See: Exhibit-4

On July 30, 2008, a blood sample was collected from me for the purpose of testing for antibodies to hepatitis C. The results of this hepatitis C antibody test revealed that the grievant was positive for hepatitis C and that supplemental testing was not required.

See: Exhibit-5 (1 pg. blood test)

On October 29, 2008, my AST level was 52, my ALT level was 53, Glucose level at 126, Bun/creat Ratio was 5.7, and HDL at 32.

See: Exhibit-6 (1 pg. blood test)

On February 11, 2009, my AST level was 47, Glucose level was 114, Bun/creat Ratio was 4.7, and HDL at 28.

See: Exhibit-7 (1 pg. blood test)

On June 1, 2009, my AST level was 65, ALT level 63, Glucose level at 119, and HDL at 32.

See: Exhibit-8 (

On July 14, 2009, a blood sample was collected from me again for the purpose of testing for antibodies to hepatitis C. The results of this test revealed again→

(2)

that the grievant was positive for hepatitis C and that supplemental testing was not required.

The same test results revealed my Ast level was 59, ALt level was 53, Glucose level at 124, Bun/creat Ratio was 6.4, and HDL at 31, and Triglyceride level at 160. **See: Exhibit-9** (3 pg. blood test)

The grievant asserts that the Medical Director, Dr. Sylvia Mahone, and other medical staff which are unknown to grievant at this time, ignored or otherwise disregarded his abnormal alanine aminotransferase (ALt) and aspartate transaminase (Ast) levels, "which are sensitive indicators of liver injury", from February 14, 2007, until July of 2009, and that the same medical Director and medical staff deliberately concealed from him that he had tested positive for hepatitis C on July 30, 2008. On July 29, 2008, nurse Judy Ellinger, attended the grievants regularly scheduled Hypertension/Cardiovascular clinic, and this nurse ordered that he be screened for hepatitis. Nurse Ellinger signed her name, and also initialed the "offender progress note" that accompanies this order.

**See: Exhibit-10** (1 pg. offender progress note)

On July 30, 2008, the grievant submitted to a blood test and the results of that test revealed that he tested positive for antibodies to hepatitis C. Medical Director, Sylvia Mahone, reviewed this blood test result on August 1, 2008 and initialed said result.

**See: Exhibit-5**

The grievant asserts that he was never told by any medical staff, Doctors, or Medical Director, that he had tested positive for hepatitis C, or that he even had abnormal Ast/ALt levels. The grievant was made to believe that all the blood test he had underwent up to this point was part of the protocol for his regularly scheduled Hypertension/cardiovascular clinic he attended every three (3) months. Infact, the record also reflects that due to the Medical Director and certain medical staff disregarding grievants blood test results, the grievant had to go another year, to July 14, 2009, with abnormal ALt/Ast levels.

③

1-9-2009

Distribution: Master File; Offender

Page 2

DOC 0046 (Rev. 3/2005)

Pontiac Corr. Cir.
Grievance Off.

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 9-1-09 | Offender: (Please Print) James Myles | ID#: A15155 |
|---|---|---|

| Present Facility: | Facility where grievance issue occurred: |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☐ Staff Conduct    ☐ Dietary    ☐ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify): _____

☐ Disciplinary Report: ____/____/____
           Date of Report                            Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

     **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     **Chief Administrative Officer,** only if EMERGENCY grievance.
     **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Relief Requested:** _____

_____

_____

☐ Check **only** if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____    _____    ____/____/____
Offender's Signature                   ID#                  Date
**(Continue on reverse side if necessary)**

---

| **Counselor's Response (if applicable)** |
|---|

Date Received: ____/____/____    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____    _____    ____/____/____
Print Counselor's Name                Counselor's Signature             Date of Response

---

| **EMERGENCY REVIEW** |
|---|

Date Received: ____/____/____    Is this determined to be of an emergency nature?
                                             ☐ Yes; expedite emergency grievance
                                             ☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____    ____/____/____
Chief Administrative Officer's Signature                              Date

Printed on Recycled Paper

It was on or about the first week in July of 2009, that the grievant saw Dr. Castravillo in the health care unit. At that time, Dr. Castravillo noticed the grievants abnormal Alt/Ast levels and told grievant that he would be checked for hepatitis. On July 14, 2009, a hepatitis C antibodies blood test was preformed and the results of that test came back positive again for Hepatitis C virus. On July 16, 2009, Medical Director, Sylvia Mahone reviewed this blood test and initialed her name. See: Exhibit-9

It was on July 23, 2009, when Sylvia Mahone, had the grievant brought to the health care unit and told him that he tested positive for hepatitis C. Sylvia Mahone asked the grievant if he had ever injected drugs in his past, and grievant replied yes. Sylvia Mahone then told the grievant that he would be getting a series of 3 shots to vaccinate him against hepatitis B, and then our meeting ended and I returned to my cell. See: Exhibit-11 (1 pg. offender progress note)

The grievant asserts that the first clinical indication that he should have been screened for hepatitis was on February 14, 2007, when his blood test revealed abnormal Alt/Ast levels. The Illinois Department of Corrections has adopted the policy of the " Federal Bureau of Prisons — Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis", and that policy, in which the CDC and American Liver Foundation helped generate, dictates that inmates should be screened for hepatitis C if the inmate has elevated Alt levels of unknown etiology, or as clinically indicated, e.g., inmates with signs or symptoms of acute or chronic hepatitis or percutaneous blood exposure while incarcerated.

This was not done. The grievant went 17 months having 5 separate blood test, all of which revealed abnormal liver levels, and the test were ignored. Then, when the abnormal Alt/Ast levels were noticed and the grievant finally got the hepatitis C antibody test on July 30, 2008, that test also got ignored or disregarded. As proof that the grievants July 30, 2008, hepatitis C antibody test was ignored and disregarded, the grievant offers exhibit-11. Sylvia Mahone wrote, "NO previous Hep C", "Hep C ⊕ 7/14/09" "New Hep C ⊕" on this exhibit when she informed grievant he was positive.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 9-1-09 | Offender: (Please Print) James MYLes | ID#: A15155 |
|---|---|---|

| Present Facility: | Facility where grievance issue occurred: |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report           Facility where issued

    **Note:**   Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

    **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
    **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
    **Chief Administrative Officer,** only if EMERGENCY grievance.
    **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Relief Requested:** _____

_____

_____

- [ ] Check **only** if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____    _____    _____ / _____ / _____
    Offender's Signature                 ID#             Date
           **(Continue on reverse side if necessary)**

| **Counselor's Response (If applicable)** |
|---|

Date Received: _____ / _____ / _____    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____    _____    _____ / _____ / _____
    Print Counselor's Name           Counselor's Signature         Date of Response

| **EMERGENCY REVIEW** |
|---|

Date Received: _____ / _____ / _____    Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____    _____ / _____ / _____
    Chief Administrative Officer's Signature         Date

Printed on Recycled Paper

All together, the grievant was allowed to go for 29 months (2½ years) with abnormal ALT/Ast levels and not being told by health care personnel that he had tested positive for the hepatitis C virus.

Its also alarming that even after the grievant was told by Sylvia Mahone that he tested positive for HCV, no-one counseled the grievant regarding the natural history of the infection, potential treatment options, or the specific measures for preventing transmission to others. A baseline clinician evaluation also should have been done which consisted of an estimation and documentation of the earliest possible date of infection, a targeted history and physical examination to evaluate for signs and symptoms of liver disease, quantify prior alcohol consumption and determine risk behaviors. Serum ALT, Ast, bilirubin, alkaline phosphatase, albumin, prothrombin time, and further diagnostic evaluations as clinically warranted, for other potential causes of liver disease also should have been done. This was not done.

See: Federal Bureau of Prisons - Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis, at pgs. 22-26.

The grievant asserts that since February of 2007, and probabley before that date, his Bun/creat Ratio has been low, Creatine level has been high, HDL low, Glucose level high, and Triglyceride level high. These blood levels also dictate liver disease, and they have all gone ignored or disregarded.

A layperson, or someone not trained in the field of health care could easily determine that the grievant is undergoing some sort of liver injury at the present time.

The grievant is requesting that genotyping now be done and that he undergo a liver biopsy to stage his liver disease. Determining the degree of liver disease is important for inmates who may wish to defer treatment if they have normal liver histology, or minimal fibrosis. Furthermore, inmates with abnormal ALT/Ast levels should be prioritized for liver biopsy.

See: Federal Bureau of Prisons - Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis.

(5)

1-9-2009

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 9-1-09 | Offender: (Please Print) James MYLes | ID#: A15155 |
|---|---|---|

| Present Facility: | Facility where grievance issue occurred: |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____ / ____ / ____
      Date of Report                          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Relief Requested:** _____

_____

- [ ] Check **only** if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____          _____    ____ / ____ / ____
Offender's Signature                    ID#              Date

**(Continue on reverse side if necessary)**

| Counselor's Response (if applicable) |
|---|

Date Received: ____ / ____ / ____     [ ] Send directly to Grievance Officer     [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

_____          _____    ____ / ____ / ____
Print Counselor's Name                Counselor's Signature        Date of Response

| EMERGENCY REVIEW |
|---|

Date Received: ____ / ____ / ____     Is this determined to be of an emergency nature?     [ ] Yes; expedite emergency grievance
[ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____          ____ / ____ / ____
Chief Administrative Officer's Signature                  Date

050410

Page 5 of 7

The grievant also request that he be treated for his hepatitis C condition with Peaylated interferon (alfa 2a or alfa 2b) plus ribavirin.

As evidenced by all of the foregoing facts, the grievant has and will continue to suffer serious and irreparable liver damage as a result of the aforementioned medical personnel's conduct and lack thereof. As such, this grievance should be considered on an emergency basis provides that "if the Chief Administrative Officer determines that there is a substantial risk of *** serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." Furthermore, this grievance should not be forwarded to the medical department for review (as provided for by the express terms of the contract entered into between Pontiac C.C. and Wexford), nor should any member thereof be consulted for resolution of the matters contained herein, as both would create the appearance of bias and a conflict of interest and would otherwise deny grievant his right to a fair determination of the matters contained herein by an impartial fact-finder. If it is deemed necessary that a medical professional must be consulted for a proper resolution of this grievance, then the Chief Administrative Officer should exercise the same discretion which he possesses in other medical situations involving offenders to "obtain the advice of one or more physicians licensed to practice medicine in all of its branches in this state" (see, 730 ILCS 5/3-6-2 (e)), who are both independant of the Pontiac C.C. medical department and un-related to any of the matters described herein.

End of inmate grievance

⑥

0 5 0 4 1 0

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 9-1-09 | Offender: (Please Print) James Myles | ID#: A 15155 |
| --- | --- | --- |

| Present Facility: | Facility where grievance issue occurred: |
| --- | --- |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☐ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☐ Other (specify): _____

- ☐ Disciplinary Report: _____ / _____ / _____
  Date of Report          Facility where issued

**Note:**   Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:**

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Relief Requested:** _____

_____

_____

☐ Check **only** if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____          _____          _____ / _____ / _____
        Offender's Signature                          ID#                        Date

**(Continue on reverse side if necessary)**

| **Counselor's Response (If applicable)** |
| --- |

Date Received: _____ / _____ / _____     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

_____

_____          _____          _____ / _____ / _____
      Print Counselor's Name                    Counselor's Signature              Date of Response

| **EMERGENCY REVIEW** |
| --- |

Date Received: _____ / _____ / _____     Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____                              _____ / _____ / _____
Chief Administrative Officer's Signature                                      Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

Page 1 of 1

| Grievance Officer's Report |
|---|

**Date Received:** September 22, 2009     **Date of Review:** December 25, 2009     **Grievance #** (optional): 050416

**Committed Person:** Myles, James

**ID#:** A15155

**Nature of Grievance:** Medical Treatment

**Facts Reviewed:** Offender grieves medical treatment by facility HCU.

The Medical Director's response, dated 12/16/09, the grievance dated 09/07/09 was read and the applicable medical record was reviewed.

After reviewing this grievance I find that there was an unintentional delay in communication with Offender Myles. Plan of care is determined by the physician. We will continue to monitor his present condition.

Medical concerns are to be directed to the cell house CMT who will evaluate the offender or refer if appropriate. Alternatively, the offender may send a yellow "Medical Request" slip to the healthcare unit administration requesting medical services.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the offender's grievance be MOOT based on the response of facility Medical Director to the issue. Any other judgement upon this matter that when returned for cause would have no practical effect upon the existing controversy.

C/O S. Simpson
_____
Print Grievance Officer's Name

_____
Grievance Officer's Signature

**(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

**Date Received:** _____     ☑ I concur     ☐ I do not concur     ☐ Remand

**Comments:**

_____
Chief Administrative Officer's Signature

12/28/1
Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

_____
Committed Person's Signature

A-15155
ID#

1-3-10
Date

7 of 7



**Illinois**
Department of
**Corrections**

**PAT QUINN**
Governor

**MICHAEL P. RANDLE**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

July 2, 2010

James Myles
Register No.  A15155
Pontiac Correctional Center

Dear Mr. Myles:

This is in response to your grievance received on January 6, 2010, regarding medical (requests Hep C treatment), which was alleged to have occurred at Pontiac Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

Per IDOC Medical Director Dr. Schicker, medical staff are attempting to resolve other medical issues which are currently prohibiting the issuance of treatment.

The Grievance Officer's Report (050416) and subsequent recommendation dated December 25, 2009 and approval by the Chief Administrative Officer on December 28, 2009 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the grievance be denied as the offender's medical needs are being addressed by the Pontiac Correctional Center Administration, in accordance with established policies and procedures.

FOR THE BOARD: _____

Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED:_____

Michael P. Randle
Director                      7/13/10

cc:    Warden Pierce, Pontiac Correctional Center
James Myles, Register No. A15155

*Exhibit I*

```
Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL  61764
```



**University of Illinois**
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

FASTING: U

| PATIENT NAME | | PATIENT ID | DOB | SEX | STATUS | | DESTINATION |
|---|---|---|---|---|---|---|---|
| MYLES, A15155 | | A234-15155 | 07/19/1946 | M | Final | | D234 |

| PHYSICIAN | | COLLECT DATE & TIME | DATE OF SERVICE | | PRINTED ON | | PAGE |
|---|---|---|---|---|---|---|---|
| LARSON, DENNIS P | | 02/14/2007  08:35 | 02/14/2007  23:55 | | 02/15/2007  6:04 | | 1 |

| REQUISITION NO. | PT. LAB NO. | LAB REF NO. | | |
|---|---|---|---|---|
| A234.1235 | | | | |

COMMENTS:

2/15/07

| Diagnostic Procedure | Result In Range | Result Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 8 | | MG/DL | 6-20 |
| SODIUM | 136 | | MMOL/L | 135-145 |
| POTASSIUM | 3.5 | | MMOL/L | 3.5-5.3 |
| CHLORIDE | 100 | | MMOL/L | 98-108 |
| GLUCOSE | 92 | | MG/DL | 65-110 |
| CREATININE | 1.1 | | MG/DL | 0.55-1.5 |
| CALCIUM | 8.9 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 6.6 | | G/DL | 6.0-8.0 |
| ALBUMIN | 3.9 | | GM/DL | 3.4-5.0 |
| BILIRUBIN TOTAL | 0.7 | | MG/DL | 0.1-1.5 |
| ALK PHOS | 89 | | U/L | 40-125 |
| AST | | 59 H | U/L | 10-40 |
| CO2 CONTENT | 27 | | MMOL/L | 24-32 |
| ANION GAP | 9 | | MMOL/L | 3-11 |
| ALT | | 51 H | U/L | 10-50 |
| BUN/CREAT RATIO | 8 | | | 15-50 |
| LIPIDS | | | | |
| CHOLESTEROL | 153 | | MG/DL | 100-200 |
| (NOTE) | | | | |

```
Cholesterol(mg/dl):
     <200            DESIRABLE
     200-239         BORDERLINE HIGH
     >239            HIGH
---------------------------------------------
```

| TRIGLYCERIDE | 124 | | MG/DL | 45-150 |
|---|---|---|---|---|
| (NOTE) | | | | |

```
Triglycerides (mg/dl):
     <150            NORMAL
     150-199         BORDERLINE HIGH
     200-499         HIGH
     >499            VERY HIGH

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.
```

| HDL | | 25 L | MG/DL | 40-60 |
|---|---|---|---|---|
| (NOTE) | | | | |

Continued on the next page

EXHIBIT 2

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764


**University** of **Illinois**
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

FASTING: U

| PATIENT NAME MYLES, A15155 | | PATIENT ID A234-15155 | DOB 07/19/1946 | SEX M | STATUS Final | | DESTINATION D234 |
|---|---|---|---|---|---|---|---|
| PHYSICIAN MAHONE, SYLVIA | | COLLECT DATE & TIME 06/29/2007 09:38 | DATE OF SERVICE 06/29/2007 23:00 | | PRINTED ON 07/02/2007 11:11 | | PAGE 1 |
| REQUISITION NO. A234.4304 | PT. LAB NO. | LAB REF NO. | | | | | |

COMMENTS:

7/2/07

| Diagnostic Procedure | Result In Range | Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 10 | | MG/DL | 6-20 |
| SODIUM | 138 | | MMOL/L | 135-145 |
| POTASSIUM | 3.9 | | MMOL/L | 3.5-5.5 |
| CHLORIDE | 104 | | MMOL/L | 98-108 |
| GLUCOSE | 108 | | MG/DL | 65-110 |
| CREATININE | | 1.7 H | MG/DL | 0.5-1.5 |
| CALCIUM | 9.3 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 6.7 | | G/DL | 6.0-8.0 |
| ALBUMIN | 4.0 | | GM/DL | 3.4-5.0 |
| BILIRUBIN TOTAL | 1.0 | | MG/DL | 0.1-1.2 |
| ALK PHOS | 90 | | U/L | 40-125 |
| AST | | 55 H | U/L | 10-40 |
| CO2 CONTENT | 28 | | MMOL/L | 24-32 |
| ANION GAP | 6 | | MMOL/L | 3-11 |
| ALT | 49 | | U/L | 10-50 |
| BUN/CREAT RATIO | | 5.9 L | | 12-30 |
| LIPIDS | | | | |
| CHOLESTEROL | 139 | | MG/DL | 100-200 |
| (NOTE) | | | | |

Cholesterol(mg/dl):
<200              DESIRABLE
200-239           BORDERLINE HIGH
>239              HIGH

----------------------------------------

| TRIGLYCERIDE | 112 | | MG/DL | 45-150 |
| (NOTE) | | | | |

Triglycerides (mg/dl):
<150              NORMAL
150-199           BORDERLINE HIGH
200-499           HIGH
>499              VERY HIGH

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.

| HDL | 27 L | | MG/DL | 40-60 |
| (NOTE) | | | | |

Continued on the next page
MYLES, A15155

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764


**University of Illinois**
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

FASTING: U

| PATIENT NAME | PATIENT ID | DOB | SEX | STATUS | DESTINATION |
|---|---|---|---|---|---|
| MYLES, A15155 | A234-15155 | 07/19/1946 | M | Final | D234 |

| PHYSICIAN | COLLECT DATE & TIME | DATE OF SERVICE | PRINTED ON | PAGE |
|---|---|---|---|---|
| MAHONE, SYLVIA | 02/06/2008  11:08 | 02/06/2008 23:00 | 02/07/2008  6:05 | 1 |

| REQUISITION NO. | PT. LAB NO. | LAB REF NO. |
|---|---|---|
| A234.366 | | |

COMMENTS:

2/7/08

| Diagnostic Procedure | In Range | Result — Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 13 | | MG/DL | 6-20 |
| SODIUM | 139 | | MMOL/L | 135-145 |
| POTASSIUM | 4.0 | | MMOL/L | 3.5-5.3 |
| CHLORIDE | 103 | | MMOL/L | 98-108 |
| GLUCOSE | 109 | | MG/DL | 65-110 |
| CREATININE | 1.5 | | MG/DL | 0.5-1.5 |
| CALCIUM | 9.6 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 7.1 | | G/DL | 5.0-8.0 |
| ALBUMIN | 4.1 | | GM/DL | 3.4-5.0 |
| BILIRUBIN TOTAL | 1.0 | | MG/DL | 0-1.2 |
| ALK PHOS | 96 | | U/L | 40-125 |
| AST | | 41 H | U/L | 10-40 |
| CO2 CONTENT | 28 | | MMOL/L | 24-32 |
| ANION GAP | 8 | | MMOL/L | 5-11 |
| ALT | 39 | | U/L | 10-50 |
| BUN/CREAT RATIO | | 8.7 L | | 12-20 |
| LIPIDS | | | | |
| CHOLESTEROL | 172 | | MG/DL | 100-200 |
| (NOTE) | | | | |

Cholesterol(mg/dl):
```
          <200        DESIRABLE
          200-239     BORDERLINE HIGH
          >239        HIGH
```

| TRIGLYCERIDE | | 164 H | MG/DL | 45-150 |
|---|---|---|---|---|
| (NOTE) | | | | |

Triglycerides (mg/dl):
```
          <150        NORMAL
          150-199     BORDERLINE HIGH
          200-499     HIGH
          >499        VERY HIGH
```

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.

| HDL | | 31 L | MG/DL | 40-60 |
|---|---|---|---|---|
| (NOTE) | | | | |

Continued on the next page

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764


University of Illinois
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

| PATIENT NAME | | PATIENT ID | DOB | SEX | STATUS | | DESTINATION | |
|---|---|---|---|---|---|---|---|---|
| MYLES, A15155 | | A234-15155 | 07/19/1946 | M | Final | | D234 | |
| PHYSICIAN | | COLLECT DATE & TIME | DATE OF SERVICE | | PRINTED ON | | | PAGE |
| LARSON, DENNIS P | | 07/17/2008   08:40 | 07/17/2008 23:23 | | 07/18/2008   8:01 | | | 1 |
| REQUISITION NO. | PT. LAB NO. | LAB REF NO. | | | | | | |
| A234.2578 | | | | | | | | |

COMMENTS:

| Diagnostic Procedure | Result In Range | Result Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP. METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 8 | | MG/DL | 6-20 |
| SODIUM | 141 | | MMOL/L | 135-145 |
| POTASSIUM | 4.3 | | MMOL/L | 3.5-5.3 |
| CHLORIDE | 105 | | MMOL/L | 98-108 |
| GLUCOSE | | 122 H | MG/DL | 65-110 |
| CREATININE | | 1.6 H | MG/DL | 0.5-1.5 |
| CALCIUM | 9.4 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 6.7 | | G/DL | 6.0-8.0 |
| ALBUMIN | 3.9 | | GM/DL | 3.4-5.0 |
| BILIRUBIN, TOTAL | 0.6 | | MG/DL | 0-1.2 |
| ALK PHOS | 82 | | U/L | 40-125 |
| AST | | 83 H | U/L | 10-40 |
| CO2 CONTENT | 31 | | MMOL/L | 24-32 |
| ANION GAP | 5 | | MMOL/L | 7-11 |
| ALT | | 56 H | U/L | 10-50 |
| BUN/CREAT RATIO | | 5.0 L | | 12-20 |
| LIPIDS | | | | |
| CHOLESTEROL | 150 | | MG/DL | 100-200 |
| (NOTE) | | | | |

Cholesterol (mg/dl):
<200                    DESIRABLE
200-239                 BORDERLINE HIGH
>239                    HIGH

| TRIGLYCERIDE | 106 | | MG/DL | 45-150 |
| (NOTE) | | | | |

Triglycerides (mg/dl):
<150                    NORMAL
150-199                 BORDERLINE HIGH
200-499                 HIGH
>499                    VERY HIGH

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.

| HDL | | 31 L | MG/DL | 40-60 |
| (NOTE) | | | | |

Handwritten annotations: "Glucose", "Creat.", "AST (Sb)", "ALT (Sb)", "5/18/08"

Continued on the next page
MYLES, A15155                    07/18/2008  08:01                    D234

Exhibit - S

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764

 **University** of **Illinois**
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

| PATIENT NAME | PATIENT ID | DOB | SEX | STATUS | DESTINATION |
|---|---|---|---|---|---|
| MYLES, A15155 | A234-15155 | 07/19/1946 | M | Final | D234 |

| PHYSICIAN | COLLECT DATE & TIME | DATE OF SERVICE | PRINTED ON | PAGE |
|---|---|---|---|---|
| LARSON, DENNIS P | 07/30/2008 11:45 | 07/30/2008 23:23 | 07/31/2008 15:03 | 1 |

| REQUISITION NO. | PT. LAB NO. | LAB REF NO. |
|---|---|---|
| A234.2711 | | |

COMMENTS: √8/1/08

| Diagnostic Procedure | In Range | Out of Range | Units | Reference Range |
|---|---|---|---|---|
| ACUTE HEP PANEL | | | | |
| HEP A IGM AB | NEGATIVE | | | NEG |
| ANTI-HB CORE IGM | NEGATIVE | | | NEG |
| HEP B SURFACE AG | NEGATIVE | | | NEG |
| HEP C ANTIBODY | POSITIVE,CONFIRMED | | | NEG |

Positive for IgG antibodies to HCV.
High signal/cut-off ratio.
Supplemental testing is not required.

| HEP B CORE AB,TOTAL | | POSITIVE | | NEG |
| HEP A AB TOTAL | NEGATIVE | | | NEG |
| HEP B SURFACE AB | NEGATIVE | | | NEG |

(NOTE)
Positive: Antibodies to Hepatitis B surface antigen are detected at
greater than or equal to 10 mIU/mL. Result is consistent with
protective immunity to HBV.
Negative: Antibodies to Hepatitis B surface antigen are detected at
less than 10 mIU/mL. Patient is considered not to have protective
immunity to HBV infection.
Results are reported in accordance with CDC guidelines.

End of Report

Exhibit Q



Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764

**University of Illinois**
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

| PATIENT NAME | PATIENT ID | DOB | SEX | STATUS | | DESTINATION |
|---|---|---|---|---|---|---|
| LES, JAMES A15155 | A234-15155 | 07/19/1946 | M | Final | | D234 |

| PHYSICIAN | COLLECT DATE & TIME | DATE OF SERVICE | PRINTED ON | PAGE |
|---|---|---|---|---|
| | 10/29/2008 10:30 | 10/29/2008 23:30 | 10/30/2008 6:05 | 1 |

| REQUISITION NO. | PT. LAB NO. | LAB REF NO. |
|---|---|---|
| A234.4516 | | |

COMMENTS:

| Diagnostic Procedure | Result In Range | Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP. METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 8 | | MG/DL | 6-20 |
| SODIUM | 139 | | MMOL/L | 135-145 |
| POTASSIUM | 4.6 | | MMOL/L | 3.6-5.3 |
| CHLORIDE | 101 | ? | MMOL/L | 98-108 |
| GLUCOSE | | 120 | MG/DL | 65-110 |
| CREATININE | 1.4 | | MG/DL | 0.5-1.5 |
| CALCIUM | 9.5 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 7.1 | | G/DL | 6.0-8.0 |
| ALBUMIN | | | GM/DL | 3.4-5.0 |
| BILIRUBIN, TOTAL | 0.5 | | MG/DL | 0-1.2 |
| ALK PHOS | 52 | | U/L | 40-150 |
| AST | | 52 H | U/L | 10-40 |
| CO2 CONTENT | 30 | | MMOL/L | 24-32 |
| ANION GAP | 8 | | MMOL/L | 3-11 |
| ALT | | 93 H | U/L | 10-50 |
| BUN/CREAT RATIO | 5.7 L | | | 18-30 |
| LIPIDS | | | | |
| CHOLESTEROL | 160 | | MG/DL | 100-200 |
| (NOTE) | | | | |

Cholesterol(mg/dl):
<200         DESIRABLE
200-239      BORDERLINE HIGH
>239         HIGH

| TRIGLYCERIDE | 145 | | MG/DL | 45-150 |
|---|---|---|---|---|
| (NOTE) | | | | |

Triglycerides (mg/dl):
<150         NORMAL
150-199      BORDERLINE HIGH
200-499      HIGH
>499         VERY HIGH

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.

| HDL | | 32 L | MG/DL | 40-60 |
|---|---|---|---|---|
| (NOTE) | | | | |

continued on the next page
LES, JAMES A15155                          10/30/2008 06:03          D234

Exhibit - 7

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764


**University of Illinois**
Medical Center
Reference Laborator

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
Ph # (877)FOR-LABS
Lanne Maes, M.D., Director

FASTING: U

| PATIENT NAME | | PATIENT ID | DOB | SEX | STATUS | | DESTINATION |
|---|---|---|---|---|---|---|---|
| MYLES, JAMES A15155 | | A234-15155 | 07/19/1946 | M | Final | | D234 |

| PHYSICIAN | COLLECT DATE & TIME | DATE OF SERVICE | PRINTED ON | PAGE |
|---|---|---|---|---|
| MAHONE, SYLVIA | 02/11/2009 09:15 | 02/11/2009 23:30 | 02/12/2009 6:06 | 1 |

| REQUISITION NO. | PT. LAB NO. | LAB REF NO. |
|---|---|---|
| A234.207 | | |

COMMENTS:

| | Result | | | |
|---|---|---|---|---|
| Diagnostic Procedure | In Range | Out of Range | Units | Reference Range |
| COMP METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 17 | | MG/DL | 8-26 |
| SODIUM | 139 | | MMOL/L | 135-145 |
| POTASSIUM | 4.0 | | MMOL/L | 3.5-5.5 |
| CHLORIDE | 107 | | MMOL/L | 98-108 |
| GLUCOSE | | 127 H | MG/DL | 65-110 |
| CREATININE | 1.5 | | MG/DL | 0.5-1.5 |
| CALCIUM | 8.9 | | MG/DL | 8.5-10.5 |
| TOTAL PROTEIN | 6.6 | | G/DL | 6.0-8.0 |
| ALBUMIN | 3.8 | | GM/DL | 3.4-5.0 |
| BILIRUBIN TOTAL | 0.7 | | MG/DL | 0.1-1.2 |
| ALK PHOS | | | U/L | 40-125 |
| SGT | | 47 H | U/L | 10-40 |
| CO2 CONTENT | 28 | | MMOL/L | 21-32 |
| ANION GAP | 8 | | MMOL/L | 7-11 |
| ALT | 48 | | U/L | 10-50 |
| BUN/CREAT RATIO | | 4.7 L | | 12-20 |
| LIPID | | | | |
| CHOLESTEROL | 139 | | MG/DL | 100-200 |
| (NOTE) | | | | |

Cholesterol (mg/dl):
<200          DESIRABLE
200-239       BORDERLINE HIGH
>239          HIGH

| TRIGLYCERIDE | 95 | | MG/DL | 45-150 |
| (NOTE) | | | | |

Triglycerides (mg/dl):
<150          NORMAL
150-199       BORDERLINE HIGH
200-499       HIGH
>499          VERY HIGH

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual

| HDL | | 28 L | MG/DL | 40-60 |
| (NOTE) | | | | |

continued on the next page

Exhibit-8

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL  61764



**University of Illinois**
Medical Center
Reference Laboratory

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
PH # (877) FOR-LABS
Lanne Maes, M.D., Director

FASTING: U

| PATIENT NAME MYLES, JAMES A15155 | PATIENT ID A234-15155 | DOB 07/19/1946 | SEX M | STATUS Final | | DESTINATION D234 | |
|---|---|---|---|---|---|---|---|
| PHYSICIAN MAHONE, SYLVIA | COLLECT DATE & TIME 06/01/2009 10:25 | DATE OF SERVICE 06/01/2009 23:30 | | PRINTED ON 06/02/2009  8:02 | | PAGE 1 | |
| REQUISITION NO. A234.3753 | PT. LAB NO. | LAB REF NO. | | | | | |

COMMENTS:

| Diagnostic Procedure | Result In Range | Result Out of Range | Units | Reference Range |
|---|---|---|---|---|
| BLOOD UREA NITROGEN | 13 | | MG/DL | 6-20 |
| POTASSIUM | 3.9 | | MMOL/L | 3.5-5.3 |
| GLUCOSE | | 119 H | MG/DL | 65-110 |
| CALCIUM | 9.3 | | MG/DL | 8.6-10.6 |
| ALBUMIN | 4.0 | | GM/DL | 3.4-5.0 |
| ALK PHOS | 81 | | U/L | 40-125 |
| CO2 CONTENT | 30 | | MMOL/L | 24-32 |
| ALT | | 63 H | U/L | 10-50 |

**LIPIDS**

CHOLESTEROL (NOTE)

Cholesterol (mg/dl):
<200           DESIRABLE
200-239        BORDERLINE HIGH
>239           HIGH

TRIGLYCERIDE (NOTE)

Triglycerides (mg/dl):
<150           NORMAL
150-199        BORDERLINE HIGH
200-499        HIGH
>499           VERY HIGH

Triglyceride measurement must be performed on a specimen
obtained from a fasting individual.

| HDL | | 32 L | MG/DL | 40-60 |

(NOTE)

continued on the next page

Exhibit - 9

Pontiac Correctional Center
700 West Lincoln Street
P.O. Box 99
Pontiac, IL 61764



University of Illinois
Medical Center
Reference Laboratory

840 South Wood Street
Room 170 (M/C 750)
Chicago, Illinois 60612
PH # (877) FOR-LABS
Lanne Maes, M.D., Director

FASTING: N

| PATIENT NAME | PATIENT ID | DOB | SEX | STATUS | DESTINATION |
|---|---|---|---|---|---|
| MYLES, JAMES A15155 | A234-15155 | 07/19/1946 | M | Final | DE34 |

| PHYSICIAN | COLLECT DATE & TIME | DATE OF SERVICE | PRINTED ON | PAGE |
|---|---|---|---|---|
| MAHONE, SYLVIA | 07/14/2009 08:30 | 07/14/2009 23:30 | 07/15/2009 17:01 | 1 |

| REQUISITION NO. | PT. LAB NO. | LAB REF NO. |
|---|---|---|
| A234.4084 | | |

COMMENTS:

7/16/09

| Diagnostic Procedure | Result In Range | Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMP METABOLIC PANEL | | | | |
| BLOOD UREA NITROGEN | 9 | | MG/DL | 6-26 |
| SODIUM | 141 | | MMOL/L | 135-145 |
| POTASSIUM | 4.1 | | MMOL/L | 3.5-5.5 |
| CHLORIDE | 106 | | MMOL/L | 98-108 |
| GLUCOSE | | 124 H | MG/DL | 65-110 |
| CREATININE | 1.7 | | MG/DL | 0.5-1.5 |
| CALCIUM | 9.2 | | MG/DL | 8.6-10.6 |
| TOTAL PROTEIN | 6.7 | | G/DL | 6.0-8.0 |
| ALBUMIN | 4.0 | | GM/DL | 3.4-5.0 |
| BILIRUBIN TOTAL | 0.6 | | MG/DL | 0.1-1.2 |
| ALK PHOS | 92 | | U/L | 40-125 |
| AST | | 58 H | U/L | 10-40 |
| CO2 CONTENT | 28 | | MMOL/L | 24-32 |
| ANION GAP | 7 | | MMOL/L | 7-14 |
| ALT | | 55 H | U/L | 10-50 |
| BUN/CREAT RATIO | 5.4 L | | | 12-20 |
| HEP C ANTIBODY | POSITIVE CONFIRMED | | | NEG |

Positive for IgG antibodies to HCV.
High signal/cut-off ratio.
Supplemental testing is not required.

| LIPIDS | | | | |
|---|---|---|---|---|
| CHOLESTEROL | 137 | | MG/DL | 100-200 |

(NOTE)

Cholesterol (mg/dl)
<200        DESIRABLE
200-239     BORDERLINE HIGH
>239        HIGH

| TRIGLYCERIDE | | 160 H | MG/DL | 45-150 |

(NOTE)

Triglycerides (mg/dl)
<150        NORMAL
150-199     BORDERLINE HIGH
200-499     HIGH
>499        VERY HIGH

Continued on the next page
MYLES, JAMES A15155        07/15/2009 17:01

Exhibit - 10

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

**Pontiac Correctional** _____ Center

Offender Information:

| Myles | James | A15155 |
|-------|-------|--------|
| Last Name | First Name | MI |

| Date/Time | Subjective, Objective, Assessment | Plans |
|-----------|-----------------------------------|-------|
| 7-29-08 0930 | HYPERTENSION / CARDIOVASCULAR CLINIC (March – July – November) | Dx Date: |
| 216 | S: | P. PATIENT EDUCATION |
| 104/76 | Date of Dx: 2003 | Exercise Diet-low sodium, low cholesterol |
| 84 | O. PHYSICAL EXAMINATION (see flow chart) | Stop smoking Medication compliance / non-compliance _discussed_ |
| 16 | Fundus Ø retinopathy seen Lungs CTAB | complications, Compliance with clinic every 4 months. |
| | Heart RRR OE Extremities: Pulses, edema, bruits ⁻⁻ Ø ⁻⁻ | |
| | | Return to clinic every 4 months. Annual November: |
| | | EKG, U/A, Lipid Panel, Fundus Exam 1-29-08 12:45p |
| | LABORATORY: (see flow sheet) | TREATMENT: Hepatitis screen |
| | Lytes in on a diuretic ↑ AST ALT | Lovastatin 40mg ⁻ī po qHS x5m |
| | Va 141 | Lopressor 100mg ⁻ī po bid x5m |
| | k 4.3 | Capoten 50mg ⁻ī po bid x5m |
| | | NTG 0.4 mg ⁻ī SL prn x5m |
| | | Procardia XL 30mg ⁻ī po qd x5m |
| | A: HYPERTENSION / CARDIOVASCULAR CONTROL: (GOOD) FAIR POOR | ASA EC 81mg ⁻ī po qd x5m |

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_____**Pontiac Correctional**_____ Center

| Offender information: | | |
|---|---|---|
| Myles | James | A15155 |
| Last Name | First Name | MI        ID#: |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10-3-08 | cmt note | P: Refer to sk |
| 11³⁰A | O: Note sent to Dr | 2.00 collected |
| | Mahone c/o pain in his | |
| | right side near his back | |
| | x 2 wks. | |
| | _signature_ | |
| 10-07-08 | SICK CALL | |
| 9:00A | WEIGHT   210 | |
| | BP   110/70 | |
| | TPR   98.0   82   18 | |
| | MD NOTE   NSU | |
| | Ⓡ sided pain as | |
| | relates preceeded by | |
| | strenous exercise x | |
| | 2wks plus. Sharp pain | |
| | Ⓛ lower back. Non radiating | |
| | pain. No incontinence reported | |
| | No hematuria. No dysuria | _signature_ |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Exhibit - 11

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**PONTIAC CORRECTIONAL** Center

| Offender Information: | | |
|---|---|---|
| MYLES | JAMES | ID#: A15155 |
| Last Name | First Name | MI |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| | MD Note | |
| 7/23/09 11:15 AM | S: No previous Hep C | |
| 216 | Dx. Admit to | |
| 118/66 | previous IVDA many | P: |
| P-67 | years ago. | ① Twinrix |
| R-18 | | Vaccine on |
| | O: VS as above | 7/27/09 #1 |
| | Pt A0×3 /NAD/ | ② Twinrix |
| | Cooperative | Vaccine #2 |
| | Hep C ⊕ 7/14/09 | 8/27/09 |
| | A: New Hep C ⊕ | ③ Twinrix Vaccine |
| | | #3 1/27/2010 |
| | J Mahone MD | |
| | | 7/23/09 1pm J Fund RN |

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

PONTIAC CORRECTIONAL Center

Offender Information:

Last Name: Myles   First Name: James   Mi:   ID#: A15155

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/7/09 12:45P | CMT Note ⓢ Request s/c for med refill for ongoing arthritis pain in shoulders | ① Refer to s/c ⟨signature⟩ |
| 07-09-09 9:20 | SICK CALL WEIGHT ___ 215 BP ___ 150/100 TPR ___ 26-18-98 MD NOTE ___ ⟨illegible⟩ | |
| | S) Pt req. med renewal chr. Bt. shoulder pain. Adv. Ibuprofen -600 -600 mg tid pn | Plan ①) Ibuprofen -600 x tid pn x3 months. |
| | O) No acute lesions apparent today PE - not indicated or required today | ⓐ F/u pn ⟨signature⟩ |
| | A) 3/2 Long-standing Rt Shoulder Pain ⟨signature⟩ | ⟨signature⟩ 7/9/09 18 |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

*(Exhibit 12)*

Federal Bureau of Prisons
Clinical Practice Guidelines

Prevention and Treatment of Hepatitis C and Cirrhosis
June 2009

### Appendix 2. Stepwise Approach for Detecting, Evaluating & Treating Chronic Hepatitis C (continued)

---

**Step 3a. Determine if hepatitis C treatment is not recommended.**

Hepatitis C treatment is **not recommended** if any of the following four conditions are present:

**(1) Contraindications to peginterferon:**

- ☐ Severe uncontrolled psychiatric disease, particularly depression with current suicidal risk.
- ☐ History of solid organ transplant (renal, heart, or lung)
- ☐ Certain autoimmune disorders, e.g., autoimmune hepatitis
- ☐ Uncontrolled endocrine disorders, e.g., diabetes, thyroid disease
- ☐ Serious concurrent medical diseases, such as severe: hypertension, heart failure, coronary heart disease, COPD
- ☐ Decompensated cirrhosis (see text, page 13)
- ☐ Platelet count <75,000/mm$^3$ or ANC <1,500 cells/mm$^3$
- ☐ Documented nonadherence to prior therapy, or failure to complete pretreatment evaluation process
- ☐ Ongoing injection drug use or alcohol use
- ☐ Hypersensitivity to interferon

**(2) Inmate will be incarcerated for an insufficient period of time to complete treatment.**

**(3) Inmate has an unstable medical or mental health condition which precludes antiviral therapy.**

**(4) Inmate refuses treatment.**



**If any one of the above four conditions are present, then STOP further treatment-related work-up.** No further HCV testing—i.e., HCV RNA, genotype, liver biopsy—is indicated at this time. If conditions change, reconsider for hepatitis C treatment.

---

**Step 3b. Monitor HCV-infected inmates who are not on treatment.**

- ☐ **Have a plan for each inmate:** Outline the plan clearly on the Problem List/Health Summary.
- ☐ **Get baseline laboratory evaluations:** Obtain baseline labs as specified in _Appendix 3_.
- ☐ **Follow-up labs:**
  - ☐ Every 6 months: ALT, AST, bilirubin, albumin, and INR
  - ☐ Every year: CBC (with differential & platelets). Calculate APRI (see _Table 4_, page 6 for formula).
  - ☐ Other labs as clinically indicated, e.g., A1C (diabetics); TSH and free T4 (if hyperthyroid).
- ☐ **Repeat liver biopsies:** The determination regarding the timing of re-biopsy (for those inmates whose treatment is deferred) should be based on subsequent increases in the AST/Platelet Ratio Index (APRI)* and/or evidence of steatosis or inflammation. Those who develop clinical evidence of liver disease should be priority candidates for re-biopsy. If the APRI < 0.5, there is a lower risk of disease progression; if the APRI > 0.5, there is a higher risk.

---

_Note:_ The following tests are generally _NOT_ indicated for inmates _not_ on treatment.

- **HCV RNA and HCV genotype:** These tests are not needed unless treatment is indicated. _Do not periodically check HCV RNA values for inmates who are not currently candidates for treatment._ There is no correlation between HCV RNA levels and the risk or rate of disease progression.

- **Alpha fetoprotein:** Unless cirrhosis is known or strongly suspected, alpha fetoprotein is unnecessary because the risk for hepatocellular carcinoma in HCV infection does not begin until the development of cirrhosis.

- **Liver ultrasound or CT examinations:** Similarly, do not perform periodic liver ultrasound or CT examinations unless cirrhosis is present or there is another definitive indication.

- **Serum ammonia levels:** In a patient with known liver disease, the serum ammonia level has no prognostic value; nor can it be used for monitoring the effectiveness of medications such as lactulose. Serum ammonia levels are only useful in a delirious patient whose diagnosis is uncertain.

_(continued on next page)_

Exhibit 13

8-16-09

Dr. Sylvia Fahone
Medical Director
Pontiac Medical Cntr.

Presently, on July 23, 2009, I met with you during a Medical Directors' Clinic. During which time, I was informed by you, that I have tested positive for hepatitis C, and was at that time scheduled for treatments against hepatitis A, and hepatitis B, which began the following week on July 27, 2009.

Since then, I haven't been given any information about either my specific condition, or of hepatitis C in general, other than that I have tested positive for it. Everything that I have learned to date about this disease including ways to prevent it from spreading, I've learned from outside sources.

Hepatitis C is considered a silent killer, having no recognizable signs or symptoms occur until severe liver damage has occurred. Having already tested positive, I should be provided

(over)

with medical evaluation for chronic liver disease and possible treatments. I am requesting an HCV RNA to confirm infection, and a Genotype test to determine HCV type for proper recommendation and counseling regarding therapy. This is a very, very serious medical condition which requires your attention, which is what I am seeking.

Your most serious consideration in this matter is being requested.

Thank you in advance for your time.

Respectfully,
James Tyfes, A-15155
S 805

(Exhibit 13)

11-22-09

Dr. Sylvia Mahone
Medical Director
Pontiac Medical Dept.

Dr. Mahone,
On Tuesday, 11-10-09, I spoke with you
during a Medical Director's Clinic. At which time,
you began by asking me my age, and I responded
that I am 63 yrs. old. At that time, you then
responded stating that you had reviewed the
updated guidelines for the treatment of Hepatitis
C, and that those guidelines recommended "no"
treatment for persons 60 yrs. old and older, due
to adverse affects of the medication on those
persons. I have researched the medication
interferon, which is used for the treatment of
hepatitis C, and it seems that the same side
effects occur in nearly all persons who is
administered this medication, with no specific
statements of adversity being used against persons
60 yrs. or older.
However, the guidelines that you reviewed,
were the 2003 guidelines, the guidelines were
updated in 2005, and the recommendations of
"no" treatment for persons 60 yrs. old was
(cont)

eliminated from the guidelines. I have also
reviewed the updated guidelines from June 2009,
which also do not contain an age restriction.
I have enclosed with this letter a copy of
page 28 of the updated June 2009 guidelines
which have a stepwise approach for detecting,
evaluating & treating hepatitis C, that you
might see that there is no age restriction in
the updated guidelines. Also, the only groups
formerly excluded from treatment were injection
drug users, and people who consume alcohol.

    I have found too, that one of the latest
inmates here at Pontiac who has been
treated for this disease, inmate Michael
Lynch was himself 60 yrs. old at the time that
he began the interferon treatments.

    Dr. Tahore, doctor's have an ethical
responsibility to treat all those who need
treatment, I therefore beseech you to reconsider
my case for treatment.

Respectfully,
James Tyler, A-15155
S-805

ILLINOIS DEPARTMENT OF CORRECTIONS

**Consent for Medical Treatment**

PONTIAC CORRECTIONAL _____ Center

Date: 12-29-09

Time: 11' a.m. ☒ a.m. ☐ p.m.

Patient Information:

Myles _____ James _____ ID#: A15155
Last Name        First Name        MI

☒ I authorize the performance upon _____ Myself or Name of Patient _____ of the following treatment:

Hep "C" treatment
state the nature and extent of treatment

to be performed by Dr. _____ Mahone _____ or whomever he or she may designate
Name of Physician

as his or her assistants.

☐ The nature and extent of the intended treatment has been explained to me in detail, including its risk, possible complications, and

probable consequences by Dr. _____.
Name of Physician

I acknowledge that no guarantee or assurance has been made as to the results that may be obtained.

☐ I certify that I have read and fully understand the above Consent to Treatment, that the EXPLANATIONS therein referred to were

made, and that all blanks or statements requiring insertion or completion were filled in.

J. Myles                    X  James Myles                12-29-09
Print Name of Patient          Signature of Patient              Date

When patient is a Minor or Incompetent to give consent:

WITNESS  J. Freel RN          J. Freel RN                12-29-09
Print Name of Person Authorized to Consent    Signature of Person Authorized to Consent    Date

_____          _____          /    /
Print Name of Witness          Signature of Witness              Date

Distribution: Patient's Medical Record

Printed on Recycled Paper

DOC 0094 (Eff. 9/2002)
(Replaces DC 7130-A)

Exhibit 15
Page 1 of 3

12-3-09

Warden Pierce
Pontiac C.C.

Sir,

I sent to you an emergency greviance on Sept. 7, 2009, that has not yet been acted on, which delt with an ongoing injury, which is occuring to my liver. That the health care unit has neglected for 2½ yrs., while concealing the same from me.

I am also sinding another emergency greviance on 12-3-09, which deals with an ongoing denial of medical treatment concerning the above mentioned greviance.

I would appreciate if you would direct the appropriate Institutional personal to address the nature of my greviances, so that I may exhaust my institutional remedies.

Respectfully,
James Pyles, A-15155
S-805

*Second Grievance*

Page 2 of 3

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**COMMITTED PERSON'S GRIEVANCE**

051024

| Date: 12-3-09 | Committed Person: (Please Print) James Myles | ID#: A-15155 |
|---|---|---|
| Present Facility: Pontiac C.C. | Facility where grievance issue occurred: Pontiac C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ___/___/___   _____
   Date of Report       Facility where issued

Note:   Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: This grievance is based upon the Unethical, Erronious, and Indifferent decision of the Medical Direct Dr. Sylvia Mahone, of the Pontiac Medical Dept. at Pontiac Correctional Facility. On 11-10-09, I was called to the hospital for a Medical Director's Clinic, in reference to a determination by the medical director as to whether or not to treat me for a deadly medical condition to which I have been found to have tested positive for. This Condition being Hepatitis C, which is known as a "Silent Killer". It was'nt until after 2½ yrs. that the Med. Dept.

Relief Requested: HCV RNA Test, and a genotype Test, and a liver biopsy, followed by proper Treatment.

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| James Myles | A-15155 | 12, 3, 09 |
|---|---|---|
| Committed Person's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: ___/___/___ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

RECEIVED
DEC 14 2009
PONTIAC HOU

_____   _____   ___/___/___
Print Counselor's Name      Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

| Date Received: DEC 11 2009 ___/___/___ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [x] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner. |
|---|---|---|

Pontiac Corr. Ctr.
Grievance Off.

_____   _____
Chief Administrative Officer's Signature      Date   12, 8, 09

Distribution: Master File; Committed Person                Page 1                DOC 0046 (Eff.10/2001)
Printed on Recycled Paper                                      (Replaces DC 5657)

DOC 0046 (ER.102001)" (Replaces DC 3537)

Printed on Recycled Paper   Page 2

...tion. Master File: Committed Person

informed me that I had Tested positive for Hepatitis C (see original grievance)                                    . It was on July 23, 2009 when I was formally informed by Dr. Sylvia Mahone. On 11-10-09 during another medical director's clin Dr. Mahone asked me my age, and I replied that I am 68yrs old. Dr. Mahone then told me that she had reviewed the updated medical guidelines, and that those guidelines recommend "No Treatment" for persons 60yrs. old, due to the adverse effects of the medication used. Therefore, I have been granted no treatment for this deseese. However, the guidelines that the recommendation of no treatment were quoted from were "Not" the updated medical guidelines, the guidelines were from 2003, and a new revised updated guideline was released in 2005, and this guideline had eliminated the recommendation of "No Treatment" for persons 60yrs. old Since the medical directors clinic, I myself have had the opportunity to review the "New" updated medical guidelines for the Prevention and Treatment of Hepetitis C and Cirrho Federel Bureau of Prisons Clinical Practic Guidelines, dated June 2009, which were updated Jan. 22, 2009. In 1999, the I.D.O.C adopted the Federal Bureau of Prisons Guidelines for the treatment of Hepetitis C, and there is absolutely nothing at all stated in those guidelines recommending "No Treatment" for persons 60yrs. old due to adverse effects of medication. (See Exhibit 12 page 28 of the updated guideli
  I had also written a letter to Dr. Mahone, Medical Dirre of Pontiac Med. Dept. (See Exhibit 13) that she might see the error in her decision, having quoted from the 2003 guidelines, and also sent to her a copy of page 28 of the ne updated guidelines that she might see that there is "No" age restriction in reference to the Treatment of Hepetitis C in the new guidelines. I have not as of yet received any kind of a response from Dr. Mahone in reference to these findings. I have ALT (Alanine Aminotransferase) levels as high as 63 (10-50 normal) and AST (Aspertate Transaminese) levels as high as 83 (10-40 normal) an elevated alt indicates ...mation in the liver, and should be checked further for chroni
  ...ALT and AST are sensative

Exhibit 13
Page 3 of 3

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

**Date Received:** December 11, 2009    **Date of Review:** January 3, 2010    **Grievance #** (optional): 051024

**Committed Person:** Myles, James                                    **ID#:** A15155

**Nature of Grievance:** Medical Treatment

**Facts Reviewed:** Offender grieves medical treatment by facility HCU.

The Medical Director's response, dated 12/30/09, the grievance dated 12/03/09 was read and the applicable medical record was reviewed.

Offender Myles was seen at the HCU on 12/29/09. He will be evaluated for Hepatitis C treatment. He has agreed to the proposed evaluation.

Medical concerns are to be directed to the cell house CMT who will evaluate the offender or refer if appropriate. Alternatively, the offender may send a yellow "Medical Request" slip to the healthcare unit administration requesting medical services.

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the offender's grievance be MOOT based on the response of facility Medical Director to the issue. Any other judgement upon this matter that when returned for cause would have no practical effect upon the existing controversy.

S. Simpson
_____            _____
Print Grievance Officer's Name            Grievance Officer's Signature
**(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

**Date Received:** _____    ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments:**

_____                                    1-5-10
Chief Administrative Officer's Signature                                    Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

James Myles                    A-15155            1-17-10
_____        _____    _____
Committed Person's Signature            ID#                Date

Distribution:   Master File; Committed Person            Page 1            DOC 0047 (Eff. 10/2001)
(Replaces DC 5657)
Printed on Recycled Paper

Exhibit 16
Page 1 of 2

3-21-10

Warden Pierce
Pontiac C.C.

Sir,
I write this letter to you in hope
that you will assist me in getting the
health care that I need. I filed an
emergency grevience with your office
on 9-7-04, regarding treatment for a
condition that I am experiencing. That
grevience is now pending in Springfield,
and depending upon the results of said
grevience it may be processed further,
seeking other action.
I write to you because I was
given an evaluation for the treatment
that I seek approximately 2½ months
ago in the form of a blood test. This
blood test is to evaluate my condition
to see if treatment is warranted.
However, sense then I have sent two
letters to the new health care director
Dr. Taller, to see what the results of
this evaluation is and whether or not
I will receive this treatment, and my

Exhibit 16
Page 2 of 2

correspondence has gone unanswered. I have even ordered a copy of my medical records on 2-7-10, that I might see what the results of my blood test were, and whether or not if treatment would be approved for me in the form of interferon treatments, and that request has also gone unanswered.

It is my hope that you will contact the health care unit E.D. Taller, and inform them that I am seeking to know the results of the blood test I was given on 1-11-10, and whether or not if my condition warrants treatment with interferon for HCV.

Thank you in advance for your help in this matter.

Respectfully,
James Lyles, A-15155
5-830

Exhibit 17
Page 1 of 3

1-28-10

Dr. Taller
Medical Director
Pontiac Medical Unit

Sir,
    I have written this letter to you to
inquire of the furtherance of my being
evaluated for treatment of H CV.
    After having been infected, I was finally
informed of this infection 2'½ yrs. after the
medical unit had attained this knowledge. I
was called to medical director's clinic on
7-23-09 and given this information. On 7-27-09
I began injections against H B V, and again on
9-1-09, and again finally on 1-22-10. I was
again called to medical director's clinic, and
was then informed that I was being evaluated
for treatment of H CV, and at that time, I
signed a consent, or agreement form to
receive treatment. That was on 12-29-09.
On 1-11-10, I attended lab to have blood
drawn for testing, and have not been
called back to the medical unit in
reference of those test results, as furtherance
(over)

of the treatment.
    Can you, will you, please inform me
as to what is my status in this matter.
    Thanking you in advance for your
time in this matter.


Respectfully,
James Tyler, A-15755
5 - 838

2-25-10

Dr. Taller
Medical Director
Pontiac Medical Dept.

Sir,

I am again writing to you, as per your direction while speaking with you today.

On 12-29-09, I signed a consent form for evaluation and treatment of HCV, and on 1-11-10, the Lab Tech drew blood from me for testing for the treatment evaluation. As of this date, I have not been spoken to by anyone from the medical dept. in reference of the results of the blood test, and or of treatment.

Once again, I am inquiring of my status for treatment, and if I am going to receive the interferon and ribivirin medications for treatment?

Your response will be most appreciated. Thanking you in advance for your time.

Respectfully,

James Eyler, A-15155

S. 030

Exhibit 11
Page 3 of 3



**Illinois**
**Department of**
**Corrections**

**Pat Quinn**
Governor

**Michael P. Randle**
Director

Pontiac Correctional Center
700 W. Lincoln Street,  P.O. Box 99
Pontiac, IL  61764

Telephone: (815) 842-2816
TDD: (800) 526-0844

## M E M O R A N D U M

DATE:     March 09, 2010

TO:        Myles A15155        $SP-08-30$

FROM:     Steven Taller, MD
          Medical Director

SUBJECT:  **Recent Correspondence**

---

Your chart will be reviewed.  A clinic appointment is scheduled.

Medical concerns are to be directed to the cell house CMT who will evaluate
you for treatment or refer you if appropriate.  Alternatively, you may send a
yellow "Medical Request" slip to the Health Care Unit Administration
requesting medical services.

ST/cmg


Cc:   Medical Director
      QI File – Temp
      Offender Medical Record

Exhibit 18
Page 1 of 3

4-1-10

CEO
Wexford Health Services, Inc.
205 Greentree Commons
381 Mansfield Ave
Pittsburg, PA 15220

This letter is in regards to a medical
condition in which I am currently
suffering from, and seeking treatment
for. On 9-7-09, I filed an emergency
grievance with the Warden here at
Pontiac Correctional Cntr., regarding
treatment for "Hepatitis C". This grievance
is currently pending at the Director's
office for the Department of Corrections.
To be more to the point, I am alleging
that certain health care employee's who
work here, knowingly and deliberately
withheld from me information that I
am HCV positive, and that once I
was made aware of this condition, they
still neglected my condition, failing to
provide treatment. After the 2½ yrs. that
they had this knowledge, on 9-11-10, I
was finally given a blood draw for

testing, "because of my pending grievance" as part of an evaluation for treatment for HCV. Sense this blood test, I have repeatedly tryed to find out the results of said evaluation, and my requests have gone unanswered. I have even tryed to order copies of my blood test results, and even this request has gone unanswered. I feel that certain health care employee's which work for your company are deliberatly trying to delay any treatment that I may need, and in so doing, are also withholding my medical records to hide the evaluation results.

It is my intent, that once my administrative remedies are exhausted, to file legal action against you and the employee's who work for your company that are here who are involved in this if I do not receive the medical attention according to the standard of care for my condition. Your employee's are deliberately delaying and or denying treatment for my HCV condition.

There is also no follow up system

in place here, and if there is, it is
ineffective.

I hope that this letter makes you
aware of my situation, and that with little
effort on your part, you will review
my file, so that you might know how
my condition has been neglected for over
2½ yrs., and that treatment up to the
standard of care is warranted in my case.

Your firm is responsible for the
actions and inactions of all medical staff
you employ. I have a diagnosed debilitating
disease (HCV) requiring immediate treat-
ment that I am not receiving. As such,
you are now placed on notice of the
aforementioned facts, that I am not being
treated medically, and am in need of and
am requesting the Government approved
treatment of Regulated Interferon and
Ribaviron before further complications begin
to set in. Subsequent to this notice, I
will advance my efforts for treatment
with legal action.

Respectfully,
James Tyler, A-15155