IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

JAMES MYLES (A-15155),            )
                                  )
    Plaintiff,                    )
                                  )
v.                                )      No. 10-1250
                                  )
SYLVIA MAHONE, et al.,            )
                                  )
    Defendants.                   )

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendants, SHARON SIMPSON, GUY PIERCE, MICHAEL RANDLE, LOUIS SHICKER, and JACKIE MILLER, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Memorandum of Law in Support of Motion for Summary Judgment, state as follows:

**INTRODUCTION**

On August 21, 2010, Plaintiff, an inmate within the Illinois Department of Corrections (IDOC) at incarcerated at Pontiac Correctional Center (Pontiac) filed a Complaint pursuant to 42 U.S.C. §1983. Specifically, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in that they knew he suffered from Hepatitis C but did not tell him and, after he learned of his diagnosis, still refused him treatment. September 23, 2010, text order. Because no genuine issue of material fact exists that Plaintiff was and continues to receive adequate medical care from Pontiac's medical staff and Wexford's Hepatitis C Coordinator, his claim that Defendants herein were deliberately indifferent to his serious medical needs necessarily fails. Moreover, Defendants Simpson, Miller, and Shicker verified that Plaintiff was being followed by medical staff when reviewing

his grievances. Defendants Pierce and Randle had no personal involvement, as they relied on designees to review Plaintiff's grievances and letters. Finally, Defendants are entitled to qualified immunity. Accordingly, Defendants Motion for Summary Judgment should be granted.

## UNDISPUTED MATERIAL FACTS

1. Plaintiff was able to see medical staff during the relevant time period. Exhibit A, Plaintiff's deposition, pg. 24-25.

2. Plaintiff has had various lab work performed since 2007, including liver enzyme tests, HCV genotyping, and a FirboSURE test. Doc. 77-1.

3. Plaintiff had a liver biopsy in January 2011. Doc. 77-1.

4. Antiviral treatment is not medically indicated for Plaintiff's Hepatitis C. Doc. 77-1; doc. 113-2.

5. Plaintiff has no medical training. Exhibit A, Plaintiff's deposition, pg. 12.

6. Plaintiff filed an emergency grievance at Pontiac Correctional Center dated September 7, 2009, regarding his medical treatment for Hepatitis C. Exhibit B.

7. The grievance was received by the Warden's office on September 22, 2009, and found not be an emergency by Defendant Pierce's designee. Exhibit B at 1; Exhibit C, Affidavit of Guy Pierce, ¶5.

8. Defendant Simpson reviewed the grievance in her role as grievance officer at Pontiac. Exhibit B at 7.

9. Defendant Simpson forwarded the grievance to the Healthcare Unit for a response. Exhibit D, Defendant Simpson's Response to Plaintiff's First

        Interrogatories, No. 4.

10.    Defendant Simpson received a response to Plaintiff's grievance dated December 16, 2009, from Healthcare Unit Administrator Ester Martin that indicated medical staff was aware of Plaintiff's medical condition. Exhibit E, memo from Ester Martin; Exhibit F, Defendant Simpson's Response to Plaintiff's Second Interrogatories, No. 1.

11.    The grievance officer's response to the grievance made by Defendant Simpson was based on the information provided by Healthcare Unit Administrator Ester Martin. Exhibit F, Defendant Simpson's Response to Plaintiff's Second Interrogatories, No. 3.

12.    On December 28, 2009, Defendant Pierce, through his designee, concurred with the recommendation to deny the grievance. Exhibit B at 7; Exhibit C, Affidavit of Guy Pierce, ¶5.

13.    Plaintiff appealed the denial of his grievance to the IDOC Director at the time, Defendant Randle. Exhibit B at 7.

14.    Defendant Miller received the grievance on behalf of the Administrative Review Board, which reviews grievances on behalf of the Director of IDOC. Exhibit B at 8.

15.    Defendant Miller contacted Defendant Shicker, the IDOC Medical Director, for guidance on how to respond to the grievance. Exhibit G, Defendant Miller's Responses to Plaintiff's Request for Interrogatories, No. 1 and email correspondence between Defendants Miller and Shicker referenced in that answer and attached thereto.

16. Defendant Shicker, as Agency Medical Director, is an administrator responsible for oversight of the delivery of healthcare services to the entirety of the IDOC, including contract monitoring of vendors and implementation of policies and procedures for delivery of healthcare. Exhibit H, Defendant Shicker's Responses to Plaintiff's First Interrogatories, Nos. 1-2.

17. Defendant Shicker does not personally see patients and is not Plaintiff's treating physician. Exhibit H, Defendant Shicker's Responses to Plaintiff's First Interrogatories, No. 1; Exhibit I, Defendant Shicker's Responses to Plaintiff's Second Interrogatories, No. 9.

18. As of June 2009, medical providers at the various facilities are assisted by Dr. Dina Paul, a Hepatologist, who assists the on-site medical providers in all aspects of Hepatitis C management. Exhibit J, Wexford Health Sources June 4, 2009, memo; doc. 113-2, affidavit of Dr. Dina Paul.

19. Defendant Shicker consulted with Pontiac regarding Plaintiff's medical care and advised Defendant Miller that Plaintiff needed to be cleared cardiac-wise before he could be considered for treatment, which Pontiac medical staff were working on. Exhibit I, Defendant Shicker's Responses to Plaintiff's Second Interrogatories, Nos. 1-2.

20. On July 2, 2010, Defendant Miller recommended the grievance be denied because Plaintiff's medical needs were being met by Pontiac. Exhibit B at 8.

21. Defendant Randle, through his designee concurred in the denial of the grievance on July 3, 2010. Exhibit B at 8; Exhibit K, Defendant Randle's

Response to Plaintiff's Request for Interrogatories, No. 1.

22. While the first grievance was pending, Plaintiff submitted a second emergency grievance regarding his treatment for Hepatitis C on or about December 3, 2009. Exhibit L.

23. The December 3, 2009, grievance was found not to be an emergency by the Warden's designee on December 8, 2009. Exhibit L at 1; Exhibit C, Affidavit of Guy Pierce, ¶5.

24. Defendant Simpson reviewed this grievance as grievance officer and recommended its denial after being informed by Pontiac Healthcare staff that Plaintiff was being followed by medical staff for his medical issues and had been seen several days earlier. Exhibit L at 3.

25. Defendant Pierce's designee concurred in the recommended denial on January 5, 2010. Exhibit L at 3; Exhibit C, Affidavit of Guy Pierce, ¶5.

26. Defendant Simpson has no formal medical training. Exhibit F, Defendant Simpson's Response to Plaintiff's Second Interrogatories, No. 1.

27. Defendant Miller has no formal medical training. Exhibit G, Defendant Miller's Responses to Plaintiff's Request for Interrogatories, No. 2.

28. Plaintiff additionally claims to have sent two letters regarding his medical care and grievances addressed to the Warden of Pontiac dated December 3, 2009, and March 10, 2010. Exhibit M.

29. Defendant Pierce did not personally receive or review Plaintiff's letters, as this task was done by members of his staff, who would forward inmate correspondence to the proper Department within the prison depending on the

  issue raised.  Exhibit C, Affidavit of Guy Pierce, ¶6.

30. Defendant Pierce has no personal knowledge of or involvement in Plaintiff's medical care.  Exhibit C, Affidavit of Guy Pierce, ¶7.

## **ARGUMENT**

  A. **Standard for Summary Judgment**

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant.  Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.1986). Yet not every conceivable inference must be drawn, only reasonable inferences.  Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312-13 (7th Cir.1986).

  B. **Plaintiff Cannot Establish Constitutionally Inadequate Medical Care**

Plaintiff cannot prevail on his claim Defendants herein were deliberately indifferent to his serious medical needs where he was actually under the care of a doctor unless he can first establish that the medical care he actually received from his treating physician was constitutionally inadequate.  When assessing claims of deliberate indifference against a medical professional, the "professional judgment standard" applies. Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006).  Under this standard, a medical professional is entitled to deference in treatment

decisions unless no minimally competent professional would have so responded under the circumstances. Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008). A medical professional may only be held to have displayed deliberate indifference if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible did not base the decision on such a judgment." Sain, 512 F.3d at 895. The decision must be such a departure from established practice and judgment as to demonstrate "a complete abandonment of medical judgment." Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006).

Here, Plaintiff has no such evidence. Plaintiff's treating physician, Co-defendant Mahone, avers that Plaintiff's Hepatitis C has been managed by medical staff and to a reasonable degree of medical certainty antiviral treatment is not indicated for Plaintiff. (Undisputed Material Facts 1-5). Moreover, Wexford's Health Sources Hepatitis C Coordinator avers that antiviral treatment is not medically indicated for Plaintiff. (Undisputed Material Fact 4).

Plaintiff testified in his deposition that he wants interferon antiviral treatment. Exhibit A, Plaintiff's Deposition, pg. 39. However, antiviral treatment does not automatically follow from a Hepatitis C positive diagnosis. Instead, doctors must consider liver enzyme levels, genotype of the disease, the degree of fibrosis/necrosis as reflected by liver biopsy, and contraindications. Roe v. Sims, 631 F.3d 843, 848-49 (7th Cir. 2011). The fact Plaintiff disagrees does not create a constitutional violation. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997) (an inmate is not entitled to demand specific care, nor is he entitled to the best care possible).

The only evidence contrary to Drs. Mahone and Paul's opinions offered by Plaintiff

is his own opinion that he should be put on anti-viral medication. Plaintiff has no medical training. (Undisputed Material Fact 5). The diagnosis and proper course of treatment for hepatitis C is not within a layperson's understanding. Roe, 631 F.3d 843, 865 (7th Cir. 2011). Therefore, Plaintiff's opinions regarding proper medical care lack foundation, are inadmissible, and cannot be a basis to defeat summary judgment. See Fed. R. Evid. 702. Plaintiff has no competent evidence to support any claim that the medical care he is currently receiving is such a departure from accepted professional judgment, practice or standards as to constitute the absence of professional judgment. Therefore, because Plaintiff can raise no genuine issue of material fact that he was receiving constitutionally inadequate medical care, there is no substantial risk of serious harm to which Defendants herein could have been deliberately indifferent. See Johnson v. Doughty, 433 F.3d 1001, 1012 (7th Cir. 2006) (non-medical prison official cannot be held "'deliberately indifferent simply be cause [he] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

    **C.    Defendants Were Not Deliberately Indifferent to Plaintiff's Serious Medical Needs**

Even if the Court were to find Plaintiff's medical care was constitutionally infirm, Defendants herein are entitled to summary judgment based on their investigation and referral of his grievances or their lack of personal involvement. To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). Deliberate indifference requires the prison official to act with a "sufficiently culpable state

of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994), quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991). Therefore, a prison official cannot be liable under the Eighth Amendment "unless he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer at 847 (1994).

    1.    **Defendants Simpson and Miller**

In his deposition, Plaintiff testified that his claims against Defendant Simpson are based solely on her response to his two grievances and that his claim against Defendant Miller is based solely on her response to his grievance dated July 2, 2010. Exhibit A, Plaintiff's deposition, pgs. 27-30. Defendants Simpson, Miller, and Shicker are entitled to summary judgment due to their investigation and referral of Plaintiff's complaints regarding his medical care.

The Seventh Circuit has squarely held that grievance reviewers are insulted from liability when they investigate and refer inmate medical complaints to medical professionals. In Johnson, 433 F.3d 1001, the Seventh Circuit held that a grievance counselor, the warden, a member of the Administrative Review Board, and the Director of IDOC were entitled to summary judgment on the Plaintiff's deliberate indifference claim. The Seventh Circuit held that the grievance counselor who "investigated the situation, made sure that medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions" was not deliberately indifferent. Johnson, 433 F.3d at 1010. The other defendants were also entitled to summary judgment because they "reasonably relied" on the fact that the inmate was being seen by medical staff. Johnson, 433 F.3d at 1011.

In Johnson, the plaintiff alleged that the defendants ignored his complaints of pain

9

and were deliberately indifferent to his need for surgery. The court noted that the defendants could not be expected to determine whether the plaintiff actually needed surgery, and were entitled to rely on the opinions of the doctors who were treating the plaintiff. "Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals." Johnson, 433 F.3d at 1011; see also Hayes v. Snyder, 546 F.3d 516, 527-28 (7th Cir. 2008) (non-medical administrators are entitled to defer to judgment of prison medical staff so long as they do not ignore the plaintiff).

When Defendant Simpson received Plaintiff's medical grievances, she forwarded them to Pontiac's Healthcare Unit for a Response. (Undisputed Material Facts 9-11). The response to both grievances was that Plaintiff was being monitored by medical staff for his condition. (Undisputed Material Fact 10). The response to the December 3, 2009, grievance indicates medical staff reported to Defendant Simpson that Plaintiff had been seen on December 29, 2009. (Undisputed Material Fact 24).

Similarly, when Defendant Miller received Plaintiff's appeal of his September 7, 2009, grievance, although she already had the response of Pontiac's medical staff, out of an abundance of caution she contacted Defendant Shicker, IDOC's medical director, who provided her with information he obtained from Pontiac to make a response. (Undisputed Material Facts 14-15, 19-20). Neither Defendant Simpson, nor Defendant Miller have any formal medical training. (Undisputed Material Facts 26-27). They referred Plaintiff's complaints regarding his medical care to those who could address them. Johnson is controlling as to Defendants Simpson and Miller and entitles them to judgment as a matter

of law.[1]

### 2. Defendant Shicker

Defendant Shicker is entitled to summary judgment because he had no personal involvement in Plaintiff's medical care and because he reasonably responded when asked by Defendant Miller about Plaintiff's medical care. The extent of Defendant Shicker's involvement in this case and the only reason Plaintiff sued him is the sentence in the July 2, 2010, Administrative Review Board letter, which states "per IDOC Medical Director Dr. Shicker, medical staff are attempting to resolve other medical issues which are currently prohibiting the issuance of treatment." Exhibit A, Plaintiff's deposition, pgs. 32-34. Plaintiff believes that Defendant Shicker should have reviewed Plaintiff's medical records and saw that he received interferon treatment for his Hepatitis C. Exhibit A, Plaintiff's deposition, pgs. 34, 39.

Defendant Shicker, as Agency Medical Director, is an administrator responsible for oversight of the delivery of healthcare services to the entirety of the IDOC, including contract monitoring of vendors and implementation of policies and procedures for delivery of healthcare. (Undisputed Material Fact16). Defendant Shicker does not personally see patients and is not Plaintiff's treating physician. (Undisputed Material Fact 17). Instead, as of June 2009, medical providers at the various facilities are assisted by Dr. Dina Paul, a Hepatologist, who assists the on-site medical providers in all aspects of Hepatitis C

---

[1] To the extent Plaintiff's claim encompasses the failure to inform him he had Hepatitis C, it would seem that claim is only against medical staff. By the time Plaintiff grieved the issue in September 2009 he was obviously aware he had Hepatitis C. Any alleged failure to communicate to Plaintiff that he had Hepatitis C cannot be charged to Defendants herein where they were not made aware until after Plaintiff was.

management. (Undisputed Material Fact 18).

The Seventh Circuit has held that prison administrators are entitled to divide tasks and a §1983 Plaintiff is not entitled to insist that one employee do another's job. In Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009), an inmate sued various prison officials, only two of whom played a personal role—the head of the prison's medical unit and a grievance reviewer— for deliberate indifference to his serious medical needs for their failure to properly treat him for an eye injury. The Court allowed the claim against the head of the medical unit to proceed to discovery because the Complaint was silent as to his interactions with her (because it was possible she did not reasonably respond to his complaints). Burks, 555 F.3d at 594. The Court dismissed the Complaint as to the grievance reviewer and other supervisory officials, stating as follows:

> "Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen." Burks, 555 F.3d at 595.

Here, Plaintiff is pursuing a theory similar to the plaintiff in Burks in that he is insisting that Dr. Shicker do the job of Plaintiff's treating physician. Defendant Shicker, as an administrator with myriad responsibilities, is entitled to rely on the on-site medical professionals and the hepatologist who has been retained to assist with evaluation and treatment of Hepatitis C. Nonetheless, when asked by Defendant Miller about Plaintiff, Defendant Shicker contacted Pontiac and was informed that Plaintiff needed to be cleared cardiac-wise before he could be considered for treatment, which Pontiac was currently

working on. (Undisputed Material Fact 19). It appears Defendant Miller's response to Plaintiff may have given Plaintiff the impression that a cardiac problem existed, when in fact, Dr. Shicker was referring to routine cardiac clearance based on Plaintiff's age (66). See April 2009 Hepatitis C Guideline at Bates 12 attached hereto as Exhibit N (all patients evaluated for treatment above 50 years of age shall have a cardiac stress test prior to final determination of treatment). Defendant Shicker is entitled to summary judgment per Burks due to his lack of personal involvement in Plaintiff's actual medical treatment and per Johnson for his reasonable response to the inquiry about Plaintiff's grievance.

### 3. Defendants Pierce and Randle

Defendants Pierce and Randle are entitled to summary judgment because they had no personal involvement in responding to Plaintiff's grievances (or in Pierce's case) Plaintiff's letters. Section 1983 creates a cause of action based on personal liability and fault. Wolfe-Lillie v. Sonquist, 699 F.2d 864, 869 (1983). An individual cannot be held liable unless he caused or participated in an alleged constitutional deprivation. Wolfe-Lillie, 699 F.2d at 869. Section 1983 liability cannot be based on a respondeat superior theory. Wolfe-Lillie, 699 F.2d at 869. Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. Wolfe-Lillie, 699 F.2d at 869. A causal connection or affirmative link between the conduct complained of and the individual sued must exist. Wolfe-Lillie, 699 F.2d at 869, citing Rizzo v. Goode, 423 U.S. 362, 371 (1976).

Plaintiff charges Defendant Pierce with knowledge of his inadequate medical care through the two grievances he filed and the two letters he mailed to Defendant Pierce. Exhibit A, Plaintiff's deposition, pgs 28-29. However, Defendant Pierce did not personally

review the grievances.  (Undisputed Material Facts 7, 12, 23, 25).  His signature was affixed to them by a member of his staff with authorization.  (Undisputed Material Facts 7, 12, 23, 25).  Moreover, correspondence directed to Defendant Pierce from inmates was handled in the same manner as grievances in that Defendant Pierce did not personally review it.  (Undisputed Material Fact 29).  A member of his staff reviewed them and forwarded them to the appropriate department for handling based on the nature of the complaint.  (Undisputed Material Fact 29).  Defendant Pierce has no personal knowledge of or involvement in Plaintiff's medical care and is entitled to summary judgment.  (Undisputed Material Fact 30).

Plaintiff's has named Defendant Randle in this case solely based on his name appearing on the July 2, 2010, Administrative Review Board response to Plaintiff's grievance.  Exhibit A, Plaintiff's deposition, pg. 32.  However, Defendant Randle did not personally review Plaintiff's grievance; his role in the grievance process was handled by a designee.  (Undisputed Material Fact 21).  Defendant Randle had no personal involvement in reviewing the grievance.  Accordingly, Defendant Randle is entitled to summary judgment.

    **D.**    **Defendants are Entitled to Qualified Immunity**

Defendants are entitled to qualified immunity on Plaintiff's claim. In Saucier v. Katz, 533 U.S. 194, 200 (2001), the United States Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims.  First, a court must decide whether the facts that a plaintiff has alleged (See Fed. R. Civ. P 12(b)(6), (c)) or shown (See Fed. R. Civ. P. 56, 60) make out a violation of a constitutional right.  Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009), citing Saucier, 533 U.S. at 201.  "Second, if the plaintiff has

satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. At 816. Qualified immunity applies unless the official's conduct violated a clearly established constitutional right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

First, the record does not establish a constitutional violation by Defendants. Instead, it shows that Plaintiff was receiving adequate medical care and that when he complained about that care, his Complaints were nonetheless investigated by Defendants Simpson, Miller, and Shicker, who verified he was under the care of medical staff. Defendants Pierce and Randle had no involvement whatsoever. Therefore, Defendants are entitled to summary judgment under Saucier's first prong.

To the extent, the Court were to determine these facts make out a constitutional violation, such a holding would be a change in established precedent for personal involvement and in the obligations of those who review inmate complaints as set out in Hayes, Johnson, and Burks. Therefore, Defendants would be entitled to qualified immunity from damages under Saucier's second prong.

. **CONCLUSION**

Because no genuine issue of material fact exists that Plaintiff was and continues to receive adequate medical care from Pontiac's medical staff and Wexford's Hepatitis C Coordinator, his claim that Defendants herein were deliberately indifferent to his serious medical needs necessarily fails. Moreover, Defendants Simpson, Miller, and Shicker verified that Plaintiff was being followed by medical staff when reviewing his grievances. Defendants Pierce and Randle had no personal involvement, as they relied on designees to review Plaintiff's grievances and letters. Finally, Defendants are entitled to qualified

immunity.  Accordingly, Defendants Motion for Summary Judgment should be granted.

WHEREFORE, for the above and forgoing reasons, Defendants respectfully requests that this Honorable Court enter summary judgment in their favor and grant any further relief the Court deems necessary and proper.

                Respectfully submitted,

                SHARON SIMPSON, GUY PIERCE, MICHAEL RANDLE, LOUIS SHICKER, and JACKIE MILLER,

                     Defendants,

                LISA MADIGAN, Attorney General,
                State of Illinois

Joseph N. Rupcich, #6283899      Attorney for Defendants,
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706      By:  s/Joseph N. Rupcich
(217) 782-1841                      Joseph N. Rupcich
   Of Counsel.                      Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES MYLES (A-15155), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-1250 |
| | ) | |
| SYLVIA MAHONE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2011, I electronically filed Defendants' Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

and I hereby certify that on November 30, 2011, I mailed by United States Postal Service, the document to the following non-registered participant:

James Myles, A-15155
Pontiac Correctional Center
P. O. Box 99
Pontiac, IL 61764

Respectfully submitted,

By: s/Joseph N. Rupcich
Joseph N. Rupcich, #6283899
Attorney for Defendants
Office of the Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217)782-1841
Facsimile:  (217) 524-5091
jrupcich@atg.state.il.us